The Item Company, Inc., a domestic corporation engaged in the publication of a newspaper known as "The New Orleans Item", brought this suit against La Place Chamber of Commerce, an unincorporated voluntary association, and W.J. Roussel, to recover the sum of $1,092, allegedly due by the defendants on an advertising contract. The agreement sued upon, which is in writing, is in the nature of an offer which was made by La Place Chamber of Commerce, acting through W.J. Roussel, its president, on January 9, 1941, addressed to the Item Company, Ltd., authorizing the latter to insert in the New Orleans Item, for 52 consecutive weeks, advertisements concerning the town of La Place, for a consideration of $3.50 per inch for each inch of space used. This offer was accepted by The Item Company, Ltd., on January 10, 1941, and, in accordance with the contract, the advertisements were inserted weekly in the newspaper, for a period of one year. On June 27, 1941, while the contract was in existence, The Item Company, Ltd., sold and assigned all of its assets, contracts and credits to The Item Company, Inc., the present plaintiff in this litigation.
The defendant, Roussel, is sought to be held individually, and in solido with La Place Chamber of Commerce, on the allegation that he guaranteed, in writing, compliance by La Place Chamber of Commerce with the contract and agreed that he would pay the bills issued by The Item Company when due.
La Place Chamber of Commerce did not answer the suit and it is not clear from the record whether a preliminary default judgment was taken against it. (It seems to have been the impression of counsel for plaintiff, at the time the case was called for trial below, that such default had been taken but we are told by counsel in oral argument here that, as a matter of fact, this is incorrect.) However, Roussel appeared in due course and filed certain exceptions to plaintiff's petition, including an exception of no right or cause of action. This exception was predicated on the theory that, conceding for the purpose of the exception that Roussel had signed the guaranty appearing upon the contract in suit, it was a special guaranty directed to The Item Company, Ltd., and that plaintiff, as assignee of that company, could not acquire any rights thereunder. All of the exceptions filed by Roussel were overruled by the trial judge and he thereafter answered setting forth, as a special defense, that he had not signed the guaranty on which recovery against him is sought.
In due course, the case proceeded to trial on the issue thus raised by Roussel's answer and, after certain preliminary proof had been made with respect to the responsibility of La Place Chamber of Commerce, evidence was heard which was confined to the asserted liability against Roussel on his written guaranty of the debt. After hearing the evidence submitted on this question, the judge of the lower court rejected plaintiff's demand, not only as against Roussel, but also as to La Place Chamber of Commerce and dismissed the suit absolutely, plaintiff has appealed to this court from the adverse decision.
In oral argument and in brief here, Roussel has reurged his exception of no cause of action which, as we have said, is based upon the theory that the guaranty, which he denies he signed, is a special one and that plaintiff, as assignee of Item Company, Ltd., has acquired no rights thereunder. However, we do not find it necessary to consider or pass upon this question since a reading of the record has convinced us that plaintiff has been unable to prove that Roussel actually signed or initialed the guaranty on which its action against him is predicated.
The contract sued upon is executed in duplicate and appears to be the customary form of advertising contract used by the New Orleans Item. The testimony of plaintiff's witnesses, Livingston and Waldo, reveals that the offer made by Roussel, as president of La Place Chamber of Commerce, to subscribe to advertising in the paper was executed at Roussel's place of business in La Place, Louisiana. Livingston says that he filled in all of the blank spaces of said contract in green ink. These insertions include the date, the words "business", "next", the numerals "6", "$3.50", the names "Livingston" and "Waldo" and *Page 569 
"La Place Chamber of Commerce". Underneath "La Place Chamber of Commerce" is found the signature "W.J. Roussel, Pres." This filling in by Livingston was done on two separate documents because the contract provides that it is to be executed in duplicate. Plaintiff's original copy of the contract has also inscribed at the bottom thereof, in typewriting, the following: "I personally guarantee this contract send all bills to me" which is followed in green ink by the initials "W.J.R.". This original also contains a notation on the left hand side, dated January 10, 1941, that the contract is approved and accepted for The item Company, Ltd. by J.W. Fanz, who was its business manager. The other original contract, which is in the possession of Roussel, is the same as plaintiff's original, except as follows: On the bottom thereof, where the guaranty is contained, is found the following typewritten words: "I personally guaranty this contract send bills to me" and does not contain the initials "W.J.R." Besides this, the contract is different in that it is approved and accepted for the Item by "S.J. Thiesen", who was at that time the credit manager.
The only witness produced by plaintiff, who swears that he saw Roussel initial the guaranty which is on the original contract introduced in evidence by plaintiff, is David I. Livingston. He testified, in substance, that, on the date of the execution of the contract, he and Mr. Waldo, another salesman, went to Roussel's place of business at La Place, Louisiana; that Roussel agreed to make the contract; that, accordingly, he (Livingston) filled in the blanks with green ink and Roussel signed as president of La Place Chamber of Commerce; that, while he (Livingston) was engaged in filling in the blanks, Waldo was using the typewriter in Roussel's office for the purpose of putting in writing the type of advertisement which would be inserted in the newspaper; that, after Roussel had signed the contract as president of the Chamber of Commerce, he (Livingston) went to the typewriter (which was not then in use by Waldo) and wrote the guaranty which appears on each of the duplicate contracts; that, after this was done, Roussel initialed the guaranty "W.J.R." and that he and Waldo returned to New Orleans and presented the contracts to Mr. Thiesen, the credit manager, for his approval.
Waldo, testifying for plaintiff, says that he was present at the time the contract was made; that he was writing on the typewriter in Roussel's office at the time the matter was discussed by Livingston and Roussel but that he did not see Roussel initial the guaranty. He further states, however, that, after Livingston and Roussel had completed their business, he heard Roussel tell Livingston "to send him (Roussel) the bills and he would collect from those fellows" and that he assumed that Roussel was talking about the members of the Chamber of Commerce.
Plaintiff's next witness was Mr. S.J. Thiesen, formerly credit manager of the New Orleans Item. He testified that, as credit manager, it was his duty to O.K. all advertising contracts; that he approved the contract in suit and that, the day after he did so, he spoke to Roussel on the telephone advising him of the fact that he had signed the contract and had personally guaranteed payment of all bills and that Roussel confirmed over the telephone that he had initialed the guaranty and was liable thereunder. He further testified that he wrote, on January 10, 1941, to La Place Chamber of Commerce, for the attention of Roussel, advising him of the contract and enclosing in the letter a duplicate original of the same. The letter referred to by the witness does not mention the enclosure of the duplicate original of the contract, nor is any reference made therein to the personal guaranty of Roussel. In fact, an examination of Thiesen's testimony has been sufficient to make us doubt his credibility as a witness. We find that he has made a number of improbable statements and that he has contradicted himself in more than one particular. In addition, it was brought out on cross-examination that Thiesen had been discharged by plaintiff in January 1942 because of numerous shortages occurring in his department and, while the judge of the trial court relieved the witness of the necessity of testifying respecting defalcations made by him on the ground that the evidence might tend to incriminate him, the record makes it quite plain that it was because of the shortages that he was forced to resign his position.
We also find that Thiesen had extreme difficulty in attempting to explain the reason why the original contract in plaintiff's possession had been accepted by Mr. Fanz, whereas the other original held by Roussel bore his (Thiesen's) signature of approval. He stated that he always accepted contracts for the Item and that the only way he could *Page 570 
account for Mr. Fanz's acceptance on plaintiff's duplicate original was that Fanz signed it after he (Thiesen) was no longer with the Item. If this be so, then Fanz did not accept the contract until after its termination, as Thiesen did not leave his employment with the Item until some time in January 1942. The acceptance by Fanz is dated January 10, 1941, and he testified that he approved the contract on that day.
In addition to the foregoing evidence, plaintiff produced numerous letters which were written on its behalf to La Place Chamber of Commerce, for the attention of Roussel, in which demand was made for the payments due on the advertising and, in some of which, Roussel was advised that he was personally liable on his guaranty. And plaintiff's witnesses state that Roussel paid no attention whatever to these communications.
In support of his defense that he did not initial the guaranty sued upon, Roussel produced Mr. Oscar Reynaud, President of the St. James Bank Trust Company, the concern with which he has carried his bank account for a number of years. Mr. Reynaud does not pretend to be a handwriting expert but testified as a layman, who had seen Roussel's signature on numerous occasions and who was thus in a position as to give an opinion as to the genuineness of the initials appearing on the guaranty. He stated, without equivocation, that the initials were not written by Roussel and he made particular reference to the letter "W" which, he says, is entirely different from the way Roussel writes the first initial of his name. Our inspection of the initialing on the document gives us the same impression, especially with respect to the "W", which seems to be quite dissimilar from the "W" used by Roussel in writing his signature.
Roussel's version of the signing of the contract is directly in conflict with the evidence given by Livingston and Waldo. He denies that any personal guaranty was written by Livingston on the typewriter in his place of business and says that, as a matter of fact, there was not a typewriter in his office. He states, in substance, that the execution of the contract by him on behalf of the La Place Chamber of Commerce was brought about through the efforts of Livingston and Waldo; that, just prior to the time the contract was made, the Item newspaper had been conducting a campaign against open gambling in St. John the Baptist Parish; that photographs of the gambling houses showing Greyhound buses bringing "clients" to these resorts had been published in the Item; that Waldo had informed him that he knew a man connected with the paper who could stop the unfavorable publicity; that this man was Livingston and that Livingston then arranged with the gamblers that he would have the campaign against gambling stopped if they, the gamblers, would give him an advertising contract; that the gamblers agreed to do this but, on account of the illegal nature of their business, it was agreed that the advertisements to be inserted in. the paper would be made for the purpose of "boosting" or praising the town of La Place; that, accordingly, Livingston came to him (Roussel) as president of the Chamber of Commerce and informed him that, while the contract would have to be made in the name of the Chamber of Commerce of La Place, there would be no liability on the part of said Chamber of Commerce and that the gamblers would pay the bill. Roussel says that it was upon these representations that he signed the contract, in his capacity as president of the Chamber of Commerce; that, before he did so, he consulted Mr. Henry Maurin, the secretary of the Chamber, who agreed thereto and that he was not authorized to sign for the Chamber of Commerce by resolution of that body. He further proclaims that he did not initial the guaranty attached to the contract; that the same is a forgery; that, as a matter of fact, he did not know until later that the contract contained a guaranty; that, when the duplicate original of the contract was sent by plaintiff to the Chamber of Commerce, it was received by Mr. Maurin, the secretary, who turned it, together with other letters demanding payment, over to him before his (Maurin's) death; that, a few days after the contract was entered into, the gambling houses were closed; that, when the amount due plaintiff was not more than $84 he received a telephone call from Thiesen (some time in the early part of March 1941) and that he advised Thiesen that, since the gamblers had gone out of business, the newspaper should cancel the contract because the Chamber of Commerce was not liable thereon. It was brought out on cross-examination that Roussel owned one of the buildings in which gambling was operated and that he received a $500 per month rental for this building. *Page 571 
The district judge did not give reasons for holding in favor of Roussel on the guaranty. However, it is certain, from the fact of his judgment, that he must have been convinced that the initials appearing on the guaranty were not made by Roussel. We do not think that he was in error in arriving at this conclusion.
It must be borne in mind that the only direct proof offered by plaintiff to show that Roussel initialed the guaranty is the testimony of Livingston and we are not at all impressed with his statement, a reading of his evidence reveals much evasiveness in his answers to questions propounded to him, and his statement concerning the execution of the guaranty by Roussel is most unsatisfactory. For instance, he could not account for the fact that the guaranty appearing on Roussel's original contract is different in its wording from that appearing on plaintiff's original and he could never successfully explain why Roussel's original was not initialed. In fact, during the course of his cross-examination, after he had repeatedly refused to give counsel a direct answer to a simple question, the trial judge finally remarked: "Then I will draw my own conclusion as to what kind of witness this is, gentlemen. It looks to me like he is just trying to be evasive."
Roussel specifically denies that the initialing on the guaranty in plaintiff's possession was written by him and he is corroborated by Mr. Reynaud, who is well acquainted with his signature and states that it is not his writing. The district judge evidently believed this evidence and we have been unable to detect manifest error in his conclusion on this question of fact.
Counsel for plaintiff contend that Roussel's failure to answer the many written demands made by plaintiff upon the Chamber of Commerce, and particularly those in which Roussel was advised of his personal responsibility as guarantor, is evidence corroborative of the genuineness of the initialing of the guaranty and that his present defense to the contrary is merely an afterthought. While it must be conceded that Roussel was careless and unbusinesslike in his attitude with respect to the communications he received from plaintiff, this circumstance is not, in itself, sufficient to destroy his defense, particularly in view of the unstable testimony submitted by plaintiff's witnesses in proof of the demand. Besides this, Roussel explains in his testimony that, after he had told Thiesen over the telephone that he did not consider that the contract was binding upon the Chamber of Commerce, he felt that there was no reason for him to answer the letters he received subsequent to that time.
Counsel for plaintiff further contend that, even though it be found that Roussel did not sign the guaranty, he is, nevertheless, personally liable on the contract as the admittedly unauthorized agent of La Place Chamber of Commerce. In support of this point, counsel direct our attention to certain testimony given by Roussel on cross-examination wherein he stated that he was not authorized by the Chamber of Commerce to sign the contract on its behalf.
The difficulty with this proposition is two-fold. In the first place, the theory of plaintiff's case against Roussel was that he is liable on the guaranty. This theory was maintained by plaintiff throughout the trial below and it was only after judgment had been rendered in favor of Roussel, and plaintiff had prosecuted this appeal, that the point was first raised. However, plaintiff's counsel direct our attention to the well-recognized rule of law that evidence admitted without objection tending to show liability on the part of a person on a ground different from that upon which the suit was founded has the effect of enlarging the pleadings and that the court has the right, under such circumstances, to decide the case on the evidence presented, even though the underlying ground of liability was not asserted in the pleadings. We take full cognizance of the jurisprudence adverted to by counsel but do not think that the doctrine relied upon should be applied in the instant matter.
It appears from the record in the case that, at the beginning of the trial below, after plaintiff had proved its case against the Chamber of Commerce by the testimony of Mr. Fanz, its business manager, the judge remarked that he would grant judgment in plaintiff's favor as against that defendant and that the case would then proceed to trial on the guaranty of Roussel. All of the testimony thereafter taken was directed solely to the question of Roussel's liability on the alleged guaranty. And it was only during the course of cross-examination of Roussel that the question of his authority to sign for the La Place Chamber of Commerce was brought forth. No one at that time, we feel sure, had any idea that the plaintiff was changing the theory of its case as to Roussel. In fact, *Page 572 
if Roussel's testimony is given its full weight with respect to the motivating cause of the contract, it is sufficient to warrant the judgment dismissing plaintiff's suit as to both defendants — forasmuch as he stated that it was understood and agreed between Livingston and Waldo, as representatives of the Item Company, that, although the contract would be signed by him as president of the La Place Chamber of Commerce, the latter would not be considered bound for the price due for the advertising but that the gamblers were to be the only parties liable. It was probably because of this evidence that the judge changed his mind when he rendered his decree and dismissed plaintiff's suit as against the Chamber of Commerce as well as Roussel.
Furthermore, the mere fact that Roussel admitted that he did not have authority to sign the contract for the Chamber of Commerce does not, of itself, warrant the conclusion that he is responsible as an unauthorized agent of a disclosed principal. On the contrary, even though it be true that he did not have authority, yet if the Chamber of Commerce ratified his action he would not be liable individually. See Article 3010 of the Civil Code. And there is nothing in the record to show that the La Place Chamber of Commerce has ever refused to ratify the contract made by Roussel on its behalf.
In addition to all of this, we do not feel that the isolated statement of Roussel that his signing on behalf of the Chamber of Commerce was unauthorized should be taken alone but that it should be considered in connection with his other testimony. In his statement, he asserts that, before he signed the contract, he took the matter up with Mr. Maurin, the Secretary of the Chamber of Commerce, who was in charge of its business affairs, and that Maurin agreed that, in view of the understanding that the Chamber of Commerce would not be liable in any event, it would be to its advantage for Roussel to sign the agreement.
We also think it pertinent to mention that plaintiff's position in this court is somewhat inconsistent. The judgment below was in favor of the Chamber of Commerce and Roussel. Plaintiff appealed from that judgment as a whole. Yet, we find it stated in the brief of plaintiff's counsel that plaintiff abandoned in the lower court its demand against the Chamber of Commerce and urged its claim against Roussel alone. Obviously, if Roussel is liable as an unauthorized agent, the Chamber of Commerce is not responsible and, if the Chamber of Commerce is liable, Roussel cannot be held except on the guaranty feature of the contract.
It is manifest that the trial judge was of the opinion that Roussel's evidence (to the effect that the agents of plaintiff represented to him, as president of the Chamber of Commerce, that the latter would not be responsible under the contract in any event and that plaintiff would look solely to the gamblers for payment) was of sufficient weight to release the Chamber of Commerce from liability, particularly in view of plaintiff's failure to offer rebuttal evidence to refute his statement. We are in accord with this view, since Roussel's uncontradicted testimony (if believed) provided a valid defense for the Chamber of Commerce and would ordinarily be sufficient to authorize an affirmance of the judgment. However, under the peculiar circumstances of this case, we believe that to adopt this course might result in a miscarriage of justice because it is obvious to us that the question of the liability of La Place Chamber of Commerce and that of Roussel, as unauthorized agent therefor, was brought into the trial merely as an incident to the primary issue which was then being considered, i.e., Roussel's responsibility on the guaranty. Therefore, we reserve to plaintiff the right to file an appropriate action against La Place Chamber of Commerce or Roussel, as its unauthorized agent, for the purpose of establishing, if it can, that the consideration for entering into the contract was not what Roussel says it was in his testimony given in this case and, to this end, plaintiff's suit against the defendants will be dismissed as of non-suit, except with respect to the question of Roussel's liability as guarantor of the contract.
For the reasons assigned, the judgment appealed from is affirmed, insofar as it releases the defendant, W.J. Roussel, from liability on the contract of guaranty asserted against him. In all other respects, the judgment appealed from is amended so as to dismiss plaintiff's suit against the defendants, La Place Chamber of Commerce and W.J. Roussel, as of non-suit at plaintiff's cost.
Amended and affirmed.
JANVIER, J., absent. *Page 573